IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENT EDWARD RENEAU, | § | |
| TDCJ-CID NO. 675226 | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-331 |
| | § | |
| DOUG DRETKE, Director of the Texas | § | |
| Department of Criminal Justice- | § | |
| Institutional Division, | § | |
|     Respondent. | § | |

## OPINION ON DISMISSAL

Petitioner Brent Edward Reneau, proceeding *pro se* and *in forma pauperis*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a disciplinary conviction for fighting without a weapon, which resulted in a non-serious injury or no injury. (Docket Entry No.1). Respondent has filed a motion for summary judgment (Docket Entry No.11), to which petitioner has filed a response. (Docket Entry No.16). After a thorough review of the pleadings, the motion for summary judgment, petitioner's response to respondent's motion for summary judgment, and the evidence in the record, including an audio recording of the disciplinary hearing, the Court will grant respondent's motion for summary judgment and deny petitioner habeas relief.

## I. CLAIMS

Petitioner alleges the following facts in his original petition (Docket Entry No.1) and his memorandum in support of his habeas petition (Docket Entry No.3): Petitioner entered a not guilty plea to a disciplinary charge of fighting without a weapon that resulted in non-serious injury or no

injury in case number 20040094636.[1]  He was placed in pre-hearing detention, where he remained for thirteen days.  After a hearing, petitioner was found guilty of the disciplinary violation and punishment was assessed at fifteen days solitary confinement, forfeiture of sixty days of good conduct time, a reduction in class line status, and thirty days of commissary and cell restriction. Petitioner filed Step 1 and 2 grievances complaining of the conviction, but were denied.  (Docket Entry No.1, Attachments).

In the pending action, petitioner seeks federal habeas relief on the following grounds:

1. He was charged with the disciplinary offense as part of a conspiracy and in retaliation for grievances that he had filed against unit officials;

2. He was deprived of due process of law because the disciplinary charge of fighting without a weapon, resulting in a non-serious injury was improper.  The offense should have been fighting or assaulting an offender without a weapon, which results in a serious injury because petitioner suffered several broken or fractured ribs;

3. He was deprived of due process of law because he did not receive verbal notice of the hearing at least twenty-four hours in advance of the hearing in violation of TDCJ-ID policy;

4. He was deprived of due process of law because he was not allowed to call as a witness the staff member who treated his injuries following the fight;

5. The evidence was insufficient to support a guilty finding because the charging officer's report, which stated that petitioner was the aggressor,

---

[1] In Step 1 Grievance #2004061852, filed on December 4, 2003, petitioner claims that he was assaulted by inmate R. Murphy on November 24, 2003, in the shower. (Docket Entry No.1, attachment). According to petitioner, inmate Murphy shoved him on the floor and kicked him in the ribs until correctional officers ran in. (*Id.*). As petitioner exited the shower, he told Captain Pickett that Murphy had assaulted him. Pickett indicated that he did not want to hear about the fight. (*Id.*).

In Step 2 Grievance #2004061852, petitioner complains that Captain Buck, who apparently was the investigating officer, determined that petitioner had assaulted inmate Murphy.  Petitioner further complains that Buck and Pickett conspired to retaliate against petitioner because of another incident involving Officer Butcher. (*Id.*).

2

        contradicted the officer's testimony at the hearing that neither inmate was the aggressor;

6. He was deprived of due process of law because (a) he was placed in pre-hearing detention in violation of TDCJ rules, thus ensuring he would be charged with a major offense; (b) he was held in pre-detention hearing for thirteen days before the hearing in violation of TDCJ policy of not more than ten days; (c) Captain Pickett, the officer who approved the investigation was not impartial because he spoke to petitioner and Murphy immediately following the offense and ordered petitioner, and not Murphy, to be placed in pre-hearing detention; (d) the investigating officer did not properly investigate the incident; (e) the hearing record was incomplete; and (f) the disciplinary hearing took place more than seven days after the offense in violation of TDCJ rules.

7. He was deprived of the effective assistance of substitute counsel. Counsel Substitute Staci Dunaway's performance was deficient in that she lied when she said petitioner asked her to sign the acknowledgment of receipt for the offense report. Counsel Substitute Shenane Boston's performance was deficient because she did not (a) fully investigate the facts; (b) perform her ministerial duties by taking petitioner's statement, interviewing and obtaining witnesses, and by gathering documentary evidence; (c) offer a viable defense; (d) confer with petitioner until a few minutes prior to the hearing; and, (e) act as an advocate by objecting to numerous due process and procedural violations. Neither Dunaway nor Boston gave petitioner access to the tape recording of the disciplinary hearing within five days of his request to review the tape;

8. He has been subject to double jeopardy because he did not receive credit for all the time that he spent in pre-hearing detention, he could not earn good time while in detention, and he lost good time as a result of the disciplinary conviction;

9. Numerous staff members refused to cooperate with petitioner's request to review the tape recording of the hearing in preparation for his administrative appeals;

10. Grievance officials did not properly investigate his administrative appeals.

11. He was deprived of due process of law because the hearing record violated TDCJ-CID policy. It did not include information that petitioner had been confined in pre-hearing detention for more than 72 hours prior to the hearing, that witnesses were excluded, the reasons for the determination of guilt in

>detail, that the hearing was not held within seven business days from the offense date, and that documentary evidence was excluded.

(Docket Entry No.1). Petitioner is eligible for mandatory supervision.

Respondent moves for summary judgment on the ground that petitioner did not exhaust his administrative remedies on all of his claims and they are now procedurally barred, and in the alternative, that petitioner's claims are not cognizable on federal habeas review. (Docket Entry No.11). The Court agrees that petitioner did not exhaust the administrative remedies on all of his claims. Nevertheless, the Court will consider the merits of petitioner's claims. The dispositive issue is whether petitioner has stated meritorious grounds for federal habeas relief.

## II. ANALYSIS

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### A. Due Process

The due process rights of prisoners are generally limited to freedom of restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Restrictions which alter the conditions of confinement do not implicate due process. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000). A prisoner has a protected liberty interest in the loss of accrued good time only if he is eligible for release to mandatory supervision. *Malchi*, 211 F.3d at 957-58.

The Court initially observes that temporary commissary and recreation restrictions, placement in solitary confinement, and reduction in class line status do not implicate due process. *See Malchi*, 211 F.3d at 958; *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (loss of commissary privileges and cell restriction); *Sandin*, 515 U.S. at 486 (confinement in administrative segregation); *Malchi*, 211 F.3d at 959 (right to particular time-earning status); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1996) (loss of opportunity to earn good time credits). However, petitioner also lost a total of sixty days of good time credit. Because petitioner is eligible for release to mandatory supervision, he may have a protected liberty interest sufficient to justify the consideration of his claims. *See Malchi*, 211 F.3d at 958-59.

### 1. Procedural Due Process

When a prisoner has a protected liberty interest in the loss of accrued good time credit, the revocation of such credit must comply with minimal procedural due process. *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). *See also Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (prisoners entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not

arbitrarily abrogated"). These minimal requirements are: (1) written notice of the alleged disciplinary violation at least twenty-four hours prior to a hearing; (2) the ability to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the hearing officer as to the evidence relied on and the reasons for any disciplinary action taken. *Wolff*, 418 U.S. at 563-565.

The record, in this case, indicates that petitioner was afforded all the procedural due process to which he was entitled. Petitioner was notified of the disciplinary charge against him on November 25, 2003, more than twenty-four hours before the hearing on December 10, 2003. (Docket Entry No.12, Disciplinary Hearing Packet at 5-6). At that time, he was informed of his right to call witnesses and present documentary evidence. (*Id.*). Offenders Murphy and Bishop, and Charging Officer Powell testified at the hearing. (*Id.* Disciplinary Hearing Packet at 14, Tape). Petitioner prepared written questions, by which Counsel Substitute questioned these witnesses. (*Id.* at 12-13, Tape). Petitioner also gave a statement and presented clinic notes from Nurse Ruby, whom he had sought to call as a witness.² (*Id.* at 9-11, ). Her notes indicated that petitioner had complained of broken or fractured ribs on December 1, 2003. (*Id.* at 9). Petitioner had also requested that Captain Pickett be called as a witness but later waived his appearance. (Tape). Petitioner was given a final report of the disciplinary hearing stating the evidence relied upon and the reason for the disciplinary action. (Docket Entry No. 12, Disciplinary Hearing Packet at 1).

---

² Petitioner requested that Ruby be called as a witness but the hearing officer allowed petitioner to present her medical notes instead because petitioner indicated that Ruby would testify to the same information contained in the medical notes. (Tape). Prison authorities are accorded wide discretion in deciding whether certain witnesses will be called. *Wolff*, 418 U.S. at 566-69. Thus, prison officials can limit the evidence a prisoner presents when they can articulate legitimate reasons for doing so. *Ponte v. Real*, 471 U.S. 491, 495-98 (1985); *cf. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985) (noting that due process generally requires the "opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [a prisoner's] defense").

Petitioner presents no summary judgment proof to contravene evidence that he received procedural due process with respect to the disciplinary proceedings.

## 2. Sufficiency of Evidence

Federal habeas review of the sufficiency of the evidence to support a disciplinary conviction is extremely limited. Due process requires only "some evidence to support the findings made in the disciplinary hearing." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 457 (1985).

In this case, petitioner was charged with a Level 2 offense, number 21, "Fighting without a weapon or assaulting an offender without a weapon, which results in a non-serious injury or no injury (injury that requires treatment up to first aid, as determined by unit medical staff)." *See* www.tdcj.state.tx.us/publications, TDCJ Disciplinary Rules and Procedures for Offenders. The charging officer specifically described the offense as follows, in pertinent part: "Offender, Reneau, Brent Edward TDCJ-ID No.00675226, did engage in a fight without a weapon with Offender Murphy, R., TDCJ No.354061, by striking offender Murphy several times in the head and body area with a closed fist. Moreover, the fight did not result in any injuries." (Docket Entry No. 12, Disciplinary Hearing Packet at 1).

The Supreme Court has determined that "[a]scertaining whether [the sufficiency-of-evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455. "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d

534, 536-537 (5th Cir. 2001). The information provided in a written incident report standing alone can satisfy the "some evidence" standard. *Id.* at 537. "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001).

Petitioner's complaint that the evidence was insufficient because the charging officer's report and his testimony were inconsistent is of no constitutional moment. Officer Powell stated in the offense report that he observed petitioner engage in a fight with inmate Murphy. (Docket Entry No.12, Disciplinary Hearing Packet at 2). Petitioner admitted that he fought Murphy, although he claimed he struck Murphy in self-defense. (Tape). The record shows that in finding petitioner guilty of the disciplinary offense, the hearing officer relied upon the statement of the charging officer and witness testimony, including petitioner's own admission that he fought offender Murphy. (Docket Entry No.12, Disciplinary Hearing Packet at 1, Tape). Accordingly, there was "some evidence" to support the hearing officer's finding that petitioner engaged in a fight with another inmate.

Petitioner, however, claims that he should have been charged with a Level 1 offense, *i.e*, number 2.3, "Fighting or assaulting an offender without a weapon, which results in a serious injury," because he sustained a serious injury to his ribs. *See* TDCJ Disciplinary Rules and Procedures for Offenders. The record, however, indicates that Offender Murphy sustained no injuries as a result of the fight. Accordingly, the evidence was sufficient to support petitioner's disciplinary conviction for fighting another inmate without a weapon, which resulted in no injury or a non-serious injury.

### 3. Impartial Hearing Officer

The Supreme Court has also determined that an inmate is entitled to have his disciplinary case decided by an impartial decision maker but has not precisely defined what constitutes an "impartial decision maker." *Wolff*, 418 U.S. at 570-71. In *Wolff*, the Supreme Court found that a hearing board made up of three prison officials was "sufficiently impartial to satisfy the Due Process Clause." *Id.* at 571. In his concurring and dissenting opinion, Justice Marshall elaborated on this finding by noting that

> [T]here is no constitutional impediment to a disciplinary board composed of responsible prison officials like those on the Adjustment Committee here. While it might well be desirable to have persons from outside the prison system sitting on disciplinary panels, so as to eliminate any possibility that subtle institutional pressures may affect the outcome of disciplinary cases and to avoid any appearance of unfairness, in my view due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case.

*Id.* at 592 (Marshall, J., concurring in part and dissenting in part).

Petitioner does not allege that the disciplinary hearing officer was involved in the investigation or the prosecution of this case and the record does not reflect any evidence of such involvement. Moreover, petitioner does not allege that the hearing officer violated TDCJ rules or acted impartially. Petitioner claims that Captain Pickett, the officer who approved the disciplinary investigation, was not impartial because he spoke to petitioner and Offender Murphy immediately after the altercation and then ordered petitioner, but not Murphy, to be placed in pre-hearing detention. Because Pickett was not the hearing officer, petitioner's claim of impartiality is not a cognizable habeas claim.

### B. Ineffective Assistance of Counsel

9

Petitioner next complains that the performance of his substitute counsel was deficient; thus, he was denied the effective assistance of counsel during the disciplinary proceedings. An inmate, however, does not have a right to either retained or appointed counsel in a disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976) (citing *Wolff*, 418 U.S. at 570). Because petitioner has no constitutional right to the assistance of counsel substitute, he cannot claim a right to habeas relief based on counsel substitute's performance. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (no right to counsel, no deprivation of ineffective assistance).

### C. Double Jeopardy

Petitioner also complains that he was subject to double jeopardy because he did not receive credit for all the time that he spent in pre-hearing detention, because he could not earn good time while in detention, and because he lost good time as a result of the disciplinary conviction.

The Double Jeopardy Clause, contained in the Fifth Amendment to the Constitution, states that no person shall "be subject for the same offense twice to be put in jeopardy of life or limb." U.S. CONST. amend. V. This clause assures three basic protections: it protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *United States v. Usery*, 518 U.S. 267, 273 (1996). Prison disciplinary proceedings, however, do not constitute criminal prosecutions. *Wolf*, 418 U.S. at 556. Hence, they do not implicate the Double Jeopardy Clause. *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994). Petitioner's double jeopardy claims are therefore without merit.

### D. Violation of TDCJ-CID Rules, Policies, Procedures

Petitioner's claims that TDCJ-CID officials failed to follow TDCJ-CID rules and policies with respect to (a) placing him in pre-hearing detention, thus ensuring that he would be charged with a major offense, (b) holding him for thirteen days in detention before the disciplinary hearing, (c) failing to conduct a proper investigation; (d) conducting a disciplinary hearing more than seven days after the offense; (e) refusing to cooperate with his request to review the hearing tape; and (f) preparing a deficient hearing record are not cognizable on federal habeas review. The failure to follow institutional rules and regulations, standing alone, does not constitute a violation of petitioner's due process rights. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"). Petitioner has not demonstrated that prison officials failed to satisfy the *Wolff* requirements in disciplinary proceeding number 20040094636; therefore, any failure to follow prison policies or procedures did not violate his right to due process.

### E. Retaliation and Conspiracy

Likewise, petitioner's retaliation claim is without merit. "To state a valid claim for retaliation ... a prisoner must allege (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). "[A]n inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory allegations of retaliation are not sufficient; rather, an "inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of

events from which retaliation may plausibly be inferred.'" *Id.* quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988). District courts must "carefully scrutinize [retaliation] claims" to insure "that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Id.* See *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) ("Every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct").

In this case, petitioner fails to provide any evidence to support his claims that the disciplinary charge was false or that any officer acted with malice or in retaliation for petitioner exercising some constitutional right. Moreover, neither the pleadings or records show any evidence from which a retaliatory motive can be inferred. Indeed, the prison records and the audiotape recording of the hearing indicate that prison officials made every effort to insure that petitioner was accorded due process. *See Al-Ra'id v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995) (holding that mere speculation of malicious intent will not support a claim of retaliation).

To the extent that petitioner is arguing that some unnamed officers conspired to cause the false disciplinary charge and punishment, he must demonstrate an agreement between persons acting under color of law to commit an illegal act or constitutional violation, and an actual deprivation of his constitutional right in furtherance of the agreement. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992). Petitioner has provided no evidence of specific operative facts to support his claims of a conspiracy; therefore, the conspiracy claims will be dismissed as conclusory. *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).

### F. Administrative Appeal

Petitioner contends that he was not provided with timely access to the hearing tape for purposes of an administrative appeal and that his appeal was not given due consideration. There is no federal constitutional right to an administrative appeal from a prison disciplinary conviction. Moreover, inmates do not have a constitutionally protected right to a grievance procedure. *See, e.g., Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest that such procedures are constitutionally mandated); *Adams*, 40 F.3d at 75 (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding prison grievance procedure does not confer substantive right on inmates; thus does not give rise to protected liberty interest under the Fourteenth Amendment); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (concluding regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding state prisoners have no legitimate claim of entitlement to grievance procedure). When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's failure to comply with appropriate grievance procedures. *See Flick*, 932 F.2d at 729.

To the extent that petitioner complains that TDCJ-CID officials failed to follow institutional policy in addressing his grievances, his complaint must fail. As previously stated, "[a] prison official's failure to follow the prison's own policies and procedures or regulations does not

constitute a violation of due process, if constitutional minima are nevertheless met." *Myers*, 97 F.3d at 94.

The record here reflects that TDCJ-CID officials responded to petitioner's complaints regarding the disciplinary hearing in their response to his grievances.

### G. Conclusion

Based on the foregoing, the Court finds that the United States Constitution was not offended with respect to the disciplinary proceedings in this case. Therefore, respondent is entitled to summary judgment.

### III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny

a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.11) is GRANTED.

2. The pending habeas action is DISMISSED with prejudice.

3. A certificate of appealability from this habeas action is DENIED.

4. All pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, on February 3, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE